## UNITED STATES v. WIMBERLY et al.

### Cr. No. 9380.

District Court, W. D. Louisiana, Shreveport Division.

Feb. 22, 1940.

Bienville, Louisiana, its citizens and taxpayers, and the J. D. Adams Company (hereafter called the Adams Company) of Indianapolis, Indiana, under these circumstances, to-wit, the members of the Police Jury for said parish "acting separately by Wards, and not by resolution or jointly, purchased during the years 1935 and 1936" from the Adams Company " * * * nine (9) International tractors, seven (7) terracers, one (1) small rotary scraper and one (1) grader", for the price of $38,666.75, which had been reduced by payments to the sum of $34,519.97, bearing interest as to part at 6 per cent. and the balance at 7 per cent.; that as of June 6, 1938, the said indebtedness stood at $39,541.83; that the defendants planned to induce the State Tax and Bond Board, and the Police Jury "as a body and jointly to approve and authorize the payment of" said last-mentioned sum to the Adams Company, and at about the same time "to represent to said J. D. Adams Company that it would be necessary for the said Company to have the assistance of the said defendants in order to collect the said alleged indebtedness", and for which they "would have to be paid 50 per cent. (50%) of the amount collected"; that, at the time, the defendant, J. S. Williams, was Secretary of the Police Jury and Treasurer of the parish, and was Mayor of the town of Arcadia, Louisiana; that J. Rush Wimberly, Sr., was one of the state judges of the district embracing Bienville Parish; that defendant M. E. Woodward was State Senator from the district also embracing said parish, and that the defendant, Lorris M. Wimberly, represented said parish in the lower house of the State Legislature, was Speaker of that body and also Chairman of the State Civil Service Commission; that J. Rush Wimberly, Jr., was employed as equipment inspector of the Highway Department of the State; and that each of the named defendants "was receiving a salary or compensation under and by virtue of his respective official office, and under a solemn oath, promise, representation and understanding to faithfully and honestly discharge and execute the duties entrusted to him, and especially to work in the interest and for the benefit of the said citizens and taxpayers, who were defrauded and intended to be defrauded under said scheme."

That it was further a part of said scheme to cause the Police Jury "to represent to

Harvey G. Fields, U. S. Atty., and Malcolm E. Lafargue, Asst. U. S. Atty., both of Shreveport, La., and O. John Rogge and Harold Rosenwald, Assts. to the Atty. Gen., for plaintiff.

B. F. Roberts, of Shreveport, La., Murray Hudson, of Monroe, La., Robert H. Wimberly, of Arcadia, La., Harry V. Booth, of Shreveport, La., and Wm. F. M. Meadors, of Homer, La., for defendants.

DAWKINS, District Judge.

Defendants were charged in an indictment of six counts with using the mails in furtherance of a scheme to defraud. In a demurrer they have attacked it for repugnancy and for the further reason that, as they contend, on its face, the bill shows no fraud to have been committed.

Some twelve typewritten pages were used in describing the scheme. Partly summarized, it was as follows: That defendants did, on or about the first of July, 1937, devise said scheme to defraud the Parish of

the State Bond and Tax Board that the said indebtedness had been incurred and contracted for in good faith, and value had been received therefor by the Police Jury", and that payment should be approved by said Board, "whereas in truth and in fact", the defendants knew that said machinery and equipment had been "sold to the members of the said Police Jury * * * in their respective Wards, separately, and not to the Police Jury jointly and as a body, but to the members forming the Bienville Parish Soil Conservation and Terracing Association, and under an understanding between said members of the said Police Jury and representatives of the said * * * Adams Company * * * that said equipment would be paid for from the funds, over and above the necessary maintenance, collected as rentals from the farmers in each Ward, who used the said machinery and equipment for terracing and soil conservation purposes"; that the said plan for payment by said association had failed, except to the extent of $4,146.47, which had peen paid; "that there was no legal or lawful resolution or ordinance of the said Police Jury * * * authorizing the purchase of the said machinery * * * or for incurring the debt or agreeing to pay the same", and that the parish taxpayers "were under no obligation to pay * * * and * * * there was no legal or lawful authority for payment by said Police Jury."

Further, that as a part of said scheme, defendants did cause to be filed in the district court of Bienville Parish a "petition for judgment against the said Police Jury" for the full amount "of approximately $38,183.35 * * * and prayed in said petition that" it be ordered to levy a tax upon the taxable property in the parish for the year 1938 of sufficient millage to pay the same with interest; and that they, the defendants, did "corruptly, immorally and improperly induce, persuade and counsel" the Police Jury "as a body politic to accept and recognize said indebtedness as a legal claim against the said Parish of Bienville * * * and to file no answer"; that as a result, judgment was taken by default, and signed by the other presiding judge of said district on March 4, 1938; but that a petition was filed for a devolutive appeal (without supersedeas) to the Supreme Court of the State "by certain taxpayers" which "was granted * * * on September 8, 1938"; and that thereupon the said defendants caused the Adams Company to cancel said judgment.

Further, that as a part of said scheme, defendants did "cause the Police Jury * * * at its meeting on May 2, 1938, to pass an ordinance authorizing the issuance of eighty (80) Parish certificates of indebtedness, with a par value of $500 each", bearing interest at 5 per cent. per annum, and maturing over a period of years "with a total principal value of $40,000 for the purpose of paying for the aforesaid machinery and equipment * * * and providing for the payment of" said certificates with interest "from one-half (1/2) of one (1) mill of the regular alimony tax of four mills authorized by the constitution and laws of the State of Louisiana"; that the defendants did cause the said Williams, as Secretary of said Police Jury "to deliver all of said certificates to" an authorized agent of the Adams Company at Arcadia, Louisiana, on October 27, 1938, "under a contract, agreement and arrangement to the effect" that it would immediately deliver * * * to said defendants" the total issue of the par value of $80,000, "in exchange for certain checks totaling the sum of $20,000"; that of this sum, $3,500 was paid out of funds on hand of the said Police Jury and that the last maturing certificates, 7 in number, bearing the numbers 74 to 80, due June 6, 1957, and 1958, were surrendered and cancelled, leaving those "of an earlier maturity in the hands of the said defendants"; that the balance of $16,500 was paid to the said Adams Company and certificates received by the defendants as follows:

|  | Certificates | Par value | Checks |
|---|---|---|---|
| J. Rush Wimberly, Sr., and J. Rush Wimberly, Jr. | 22 | $11,000 | $ 3,500 |
| M. E. Woodward | 24 | 12,000 | 7,000 |
| R. L. Williams | 7 | 3,500 | 2,000 |
| L. M. Wimberly | 18 | 9,000 | 4,000 |
| Totals | 71 | $35,500 | $16,500 |

(Note two certificates of $500 each amounting to $1,000 are not accounted for.)

That as a further part of said scheme, "defendants had, at all times, concealed from the members of the Police Jury * * * the citizens and taxpayers * * * and the Parish Officers * * * other than defendant J. S. Williams" the fact that the Adams Company "was willing to accept and did accept fifty per cent (50%) of the amount of said indebtedness in full settlement * * *, which was well known to the said defendants * * *". Further pertinent portions of the indictment are as follows:

"That as part of the said scheme and artifice to defraud, all of the defendants herein agreed among themselves that they would lend their mutual aid and assistance in causing and procuring the said Police Jury of Bienville Parish, Louisiana, to accept and recognize the said alleged indebtedness as a legal claim against the Parish of Bienville, Louisiana; in inducing the said J. D. Adams Company to employ the defendant J. Rush Wimberly, Jr., on the terms and conditions aforesaid to effect collection of the said alleged indebtedness from the Parish of Bienville, Louisiana; in inducing, persuading and causing the Police Jury of Bienville Parish, Louisiana, not to file an answer in contest of the suit filed by J. D. Adams Company as aforesaid; in causing and procuring the said Police Jury of Bienville Parish, Louisiana, to authorize and issue $40,000.00 par value of certificates of indebtedness as aforesaid; in concealing from the said Police Jury of Bienville Parish, the taxpayers and citizens of said Parish and the officers of said Parish the willingness of J. D. Adams Company to accept 50% of the amount of said claim; in making a surreptitious distribution of the profits, fruits and spoils accruing to the defendants as a result of the said scheme and artifice to defraud; and in doing any and all acts necessary to be done in furtherance of and in execution of said scheme and artifice to defraud.

"And your Grand Jurors aforesaid, upon their oaths aforesaid, do further present that among the many material false and fraudulent pretenses, representations and promises so made and to be made by the said defendants, were the following, that is to say:

"The representations and pretenses that the Police Jury, as a body politic, was on or about January 27, 1938, and on other dates, liable for the payment of the purchase price of the machinery and equipment for terracing and soil conservation work acquired from the J. D. Adams Company of Indianapolis and that the balance of the alleged indebtedness therefor in the amount of Thirty Four Thousand Five Hundred Nineteen and 97/100 ($34,519.97) Dollars, which, together with interest, brought the total indebtedness as of January 5, 1938, up to Thirty Eight Thousand One Hundred Eighty Three and 33/100 ($38,183.33) Dollars, was on or about January 27, 1938, long past due and unpaid were false and fraudulent for the reason that, as the defendants then and there well knew, the said Police Jury of Bienville Parish was not under any legal and valid obligation to pay the balance of said purchase price for said machinery and equipment or any part thereof, but on the contrary, the said machinery and equipment was sold to the members of the said Police Jury of Bienville Parish, Louisiana, separately and by wards, with the understanding and agreement that the said machinery and equipment was to be used in the terracing and soil conservation work of Bienville Parish, Louisiana, and to be paid for from the rentals collected from the users of said equipment over and above the amount necessary to maintain the equipment in usable condition, and that there was no resolution or ordinance of the Police Jury of Bienville Parish, Louisiana, acting as a body, which authorized the incurring of the said alleged indebtedness, or agreement to pay the same, or providing the means for paying either the principal or interest on said alleged indebtedness, and that three (3) of the notes evidencing Five Hundred Forty One and 50/100 ($541.50) Dollars of the alleged indebtedness were not due and would not become due until on or after February 4, 1938.

"The representations, pretenses and claims that eighty (80) parish wide certificates of indebtedness of the Bienville Parish Police Jury with a par value of Forty Thousand and no/100 ($40,000.00) Dollars would be all issued and were all issued for the purpose of paying for the machinery and equipment alleged to have been purchased from the aforesaid J. D. Adams Company by the Parish of Bienville, State of Louisiana, were false and fraudulent for the reason that, as the said defendants well knew, the said eighty (80) parish wide certificates of indebtedness with a par

value of Forty Thousand and no/100 ($40,-000.00) Dollars would not all be and were not all issued for the purpose of paying for the said machinery and equipment alleged to have been purchased from the said J. D. Adams Company by the Parish of Bienville, State of Louisiana; but on the contrary, the said J. D. Adams Company had offered to discount the alleged indebtedness 50% and there was no necessity to issue parish wide certificates of indebtedness to the amount of Forty Thousand and no/100 Dollars for the purpose of effecting the ultimate settlement of the alleged indebtedness to the said J. D. Adams Company, and the reason for issuing the said parish wide certificates of indebtedness was to enable the said defendants to obtain seventy-three (73) of the said certificates with a par value of Thirty Six Thousand Five Hundred and no/100 ($36,500.00) Dollars by paying the J. D. Adams Company $16,500.00, the defendants thereby profiting in the sum of approximately Twenty Thousand and no/100 ($20,000.00) Dollars.

"That the representations, pretenses and claims made by the defendants to the Police Jury of Bienville Parish and that the said Police Jury was under the duty and obligation of accepting and recognizing the said alleged indebtedness as a legal claim against the said Parish of Bienville were false and fraudulent in that the said Police Jury had no such duty or obligation; that the representations, pretenses and claims which the said defendants caused the said Police Jury of Bienville Parish to make to the State Tax and Bond Board in its application to said State Tax and Bond Board for permission to pay the said alleged indebtedness on the ground that the said alleged indebtedness had been incurred by the said Police Jury of Bienville Parish in connection with a soil conservation and terracing program of the said Police Jury, were false and fraudulent for the reasons that the said soil conservation and terracing program was not a program of the said Police Jury of Bienville Parish, Louisiana, which authorized the incurring of the said alleged indebtedness or agreement to pay the same; that the pretenses, representations, and claims made by the defendants to the Police Jury of Bienville Parish that the suit filed against the Parish of Bienville against the said Police Jury of Bienville Parish and the said Parish of Bienville should not be answered, were false and fraudulent in that such an answer

should have been filed for the reason that the said Police Jury of Bienville Parish and the Parish of Bienville had a legal and proper defense to the said suit, namely, that the obligation which formed the basis of the said suit was not an obligation of said Police Jury or of said Parish and, further, was to be paid only from the proceeds of rentals of equipment, the cost of which was represented by said alleged indebtedness; that the defendant J. S. Williams, as Secretary of the said Police Jury of Bienville Parish and Treasurer of the Parish of Bienville, was under a duty and obligation to disclose to the members of the Police Jury of Bienville Parish and the citizens and taxpayers of Bienville Parish the fact that the J. D. Adams Company was willing to accept 50% and did accept 50% of the amount of their claim in full settlement thereof, which fact that said J. S. Williams well knew, but contrary to his said duty and obligation the said J. S. Williams concealed this fact from the members of said Police Jury and the citizens and taxpayers of said Bienville Parish; that the other defendants herein aided, abetted, counseled and encouraged the said J. S. Williams to make such concealment as aforesaid; that the defendants Lorris M. Wimberly, as a member of the House of Representatives of the Legislature of the State of Louisiana, and the defendant M. E. Woodward, as a member of the Senate of the Legislature of the State of Louisiana, were under a duty and obligation to disclose to the members of the Police Jury of Bienville Parish, the citizens and taxpayers of Bienville Parish, and the officers of Bienville Parish the fact that the J. D. Adams Company was willing to accept 50% of the amount of their claim in full settlement thereof, which fact the said Lorris M. Wimberly and the said M. E. Woodward well knew, but contrary to their said duty and obligation, the said Lorris M. Wimberly and the said M. E. Woodward concealed the said fact from the members of the said Police Jury, the citizens and taxpayers of said Bienville Parish, and the officers of Bienville Parish; that the other defendants herein aided, abetted and counseled and encouraged the said Lorris M. Wimberly and the said M. E. Woodward to make such concealment as aforesaid;

"That the defendants J. Rush Wimberly, Sr., J. Rush Wimberly, Jr., Lorris M. Wimberly, R. L. Williams and M. E. Woodward,

as public officials and employees, were under a duty and obligation to disclose to the members of the Police Jury, the citizens and taxpayers of Bienville Parish, and the officers of Bienville Parish that they, the defendants J. Rush Wimberly, Sr., J. Rush Wimberly, Jr., Lorris M. Wimberly, R. L. Williams and M. E. Woodward, would and did receive $36,500.00 par value of the aforesaid certificates of indebtedness of the Parish of Bienville representing a profit of $20,000.00 to the said defendants but that contrary to their said duty and obligation the said defendants J. Rush Wimberly, Sr., J. Rush Wimberly, Jr., Lorris M. Wimberly, R. L. Williams and M. E. Woodward concealed from the said Police Jury of Bienville Parish their participation in the said profits, fruits and spoils of said scheme and artifice to defraud and in such concealment the said defendants were aided, abetted, counseled and encouraged by the defendant J. S. Williams.

» "And the said Grand Jurors say, present, and find that each and every one of the pretenses, representations and claims made and intended to be made by the said defendants were false and untrue and intended to be false and untrue and at all times mentioned herein were known by the said defendants to be false and untrue and were made and intended to be made by the defendants for the purpose and with the intention of obtaining from the Police Jury of the Parish of Bienville, Louisiana, the Parish of Bienville, Louisiana, the citizens and taxpayers of the Parish of Bienville, Louisiana and J. D. Adams Company, sums of money not lawfully due and converting the same to the use and benefit of said defendants."

Counsel for the Government have not filed any brief.

### Opinion.

Stated shortly, the indictment charges that the defendants devised a scheme to defraud both the parish and taxpayers, and the Adams Company; that the parish had not legally contracted to pay and did not owe the debt, but was to be induced to assume and pay it in full on representations that it was, in effect, a moral obligation, which the parish should pay; that they, the defendants, did cause the Adams Company to believe that they were the only persons who could obtain this result through the influence of the public positions

which they held, and for this reason that company would have to pay to them or to a member of their group, for their benefit, one-half of what they thus collected, or the said company would lose its entire claim; that in reality, they planned first to obtain judgment against the parish for the full amount with a provision ordering the Police Jury to levy a tax for the year 1938 upon the taxable property in the parish for its payment; that this was partly accomplished, in that the Police Jury was induced not to answer said suit and a judgment was accordingly rendered by default; that when certain taxpayers took an appeal from this judgment, defendants realized it would not stand up, and cancelled it; that thereafter they induced said Police Jury to issue certificates of indebtedness for the full amount of the claim of the Adams Company, amounting to $40,000 to be paid out of one-half of one mill of the general alimony tax of four mills, without informing it of the fact that the Adams Company would be paid only $20,000, and these defendants did take and distribute among themselves the entire issue of $40,000; that by virtue of their official positions, and particularly that of J. S. Williams, Secretary to the Police Jury and Treasurer of the parish, one of the defendants and a party to the scheme, they were bound to inform the Police Jury of the true facts and the failure to do so was a flagrant fraud upon it and the parish— in other words, the indictment says, in effect, that these defendants saw a chance to enrich themselves at the expense, both of the Adams Company and the parish, by inducing the former to give up one-half of its claim under the belief that it could not otherwise be collected, and by leading the parish to believe it had to be paid in full, when they knew the Adams Company was willing to settle for fifty cents on the dollar.

Defendants contend that if, as alleged, the parish did not owe the debt, it was impossible to injure or defraud the Adams Company of something it did not have, and no inference of fraud can be drawn from the fact that it employed defendants or some of them to collect the claim on a 50 per cent. basis. But the test is, did either the Adams Company or the parish give up something of value which a reasonable person would not have surrendered if he had known of the scheme alleged? This claim had such value that at

least the Police Jury was willing to provide for its payment over a period of time and on the terms, which after having it presented to them, according to the indictment, it gave up $3,500 in cash to take up the seven certificates maturing some twenty years hence, at their face value, and bound itself to pay all the rest with 5 per cent. interest. It may be true that the Adams Company would rather have had $20,000 cash upon an open and honest proposal from the parish, but can it be assumed, that if it had known these defendants would resort to the methods charged, it would have been willing to go through with the matter? Thus, it would seem, the whole transaction, if the allegations are true, was tainted with the alleged fraudulent intent and misconduct of those upon whom the parish had a right to rely, and I think it is for a jury to decide upon all the evidence which will be presented, whether one or both interests were intended to be defrauded. It can not be said that, taking the alleged scheme as a whole, it was impossible to defraud either or both. In a scheme to defraud, which contemplates the use of the mails, the relations of the parties thereto are similar to those engaged in a conspiracy, that is, one and all become agents of the entire group. According to the indictment, Williams occupied a position of trust, as employee of the Police Jury and as an officer of the parish, to-wit, its Treasurer. These facts were known to the other defendants, and regardless of whether their official positions, technically constituted a relation of trust to the parish and Police Jury as such, the duty rested upon Williams, to their knowledge to inform his employer and the body of which he was an officer, of any matter calculated to cause it a loss, and his failure to do so became the act and deed of all of the other defendants.

In a supplemental brief, counsel for the defendants have listed in summarized form, by paragraphs "(A)" to "(G)", both inclusive. The alleged defects of the indictment are so listed as follows:

"(A)" Because there is no averment of fact that the purchase of the terracing and road equipment in question was not an obligation of the Police Jury of Bienville Parish.

"(B) Because it is alleged affirmatively that the equipment was, in fact and in truth, purchased by the individual members

of the Police Jury representing the wards of Bienville Parish, and accordingly this allegation negatives to some extent that the obligation of the Police Jury was not a legal obligation of the Police Jury of Bienville Parish, or at least negatives the fact that it was not a moral obligation.

"(C) Because it is absurd to say that a business concern selling $40,000.00 worth of equipment would sell it to individuals with no security whatsoever, except a vendor's lien on the equipment sold; and it is further absurd to contend that nine. members of the Police Jury would obligate themselves individually for such equipment where it is shown that it was used for the benefit of the public in the parish where it was used.

"(D) Because there is no averment of allegation that the machinery was sold at a fictitious price or that the Police Jury of Bienville Parish did not receive full value.

"(E) Because it is not alleged that the machinery was not used for the benefit of the taxpayers of Bienville Parish.

"(F) Because it was not alleged that the machinery has not been in the physical possession of the Police Jury of Bienville Parish.

"(G) Because there must not only be a scheme to defraud but the scheme must include a plan to deprive the victims of something they had or was entitled to at the time this scheme was conceived in the mind of the defendants.

"In this case Adams Company was not entitled to anything if what the bill says is correct and could not have been deprived of anything, and therefore, there was no scheme to defraud the Police Jury and Adams Company."

(A) The indictment charges that this machinery was bought by the "several members of the Police Jury * * * acting separately by Wards and not by resolution or jointly" and was "sold to the members * * * in their respective wards separately * * * forming the Bienville Parish Soil Conservation and Terracing Association" with "an understanding between said members and representatives of the" Adams Company "that said equipment would be paid for from funds over and above the necessary maintenance collected as rentals from the farmers in each Ward who used the said machinery"; that payments from the said source were made

to the extent of $4,146.47, and that there was no legal or lawful ordinance authorizing the purchase of said machinery and equipment or for incurring of the debt or agreeing to pay the same; that no ways and means were provided for paying the principal and interest of the said purchase price, and that the parish and taxpayers were under no obligation to pay said debt. I think we may take cognizance of the state law, which requires the Police Jury to act as a body and specifically with respect to parish obligations, especially where, as here alleged, there was no undertaking to pay for this machinery with parish funds, even through informal action, but it was to be met by farm rentals. This, I think, sufficiently negatives the idea that it was an obligation of the parish.

(B) Granting that it was a moral obligation of the parish and that the Police Jury might, when presented with all the facts, have been willing to assume it, the indictment charges acts on the part of the defendants, which, if known to the Police Jury, may reasonably be assumed would have induced it to reject the proposal.

(C) Regardless of the absurdity of the matter, the indictment charges that the machinery was sold upon the basis of payments to be made from rentals, and this must be taken as true for the purpose of the demurrer.

(D) The bill charges that the machinery was purchased, not by the Police Jury as a body, but by its members separately, and that it was to be paid for out of rentals from farmers in performance of the work for which it was intended. We can not assume that it was of a character to be used in other legal activities of the parish, or that it had any particular value to the Police Jury.

(E) It was not necessary for the indictment to negative the proposition that it was to be used for the benefit of the taxpayers.

(F) The question of who has had physical possession of the machinery, it would seem, has no bearing upon whether the indictment charges a fraudulent scheme.

(G) This contention is answered by earlier discussion in this opinion.

My conclusion is that the demurrer should be overruled.

Proper decree should be presented.