THE STATE OF MONTANA, PLAINTIFF AND APPELLANT, *v.* JAMES ROTHER, JR., DEFENDANT AND RESPONDENT.

No. 9544.

Submitted October 31, 1955. Decided November 9, 1956.

303 Pac. (2d) 393.

Mr. Arnold H. Olsen, Atty. Gen., Mr. Charles W. Leaphart, Jr., Asst. Atty. Gen.

Mr. Stanley M. Doyle, Polson, for respondent.

Mr. Leaphart and Mr. Doyle argued orally.

MR. JUSTICE ANGSTMAN:

Defendant was charged with the crime of perjury, alleged to have been committed in Lewis and Clark County. The information charges that the defendant subscribed to a false affidavit on a claim for a gasoline tax refund dated October 17, 1949, the claimant named being Rothers Incorporated, Seely Lake, Montana. The afidavit is alleged to have been made at Ronan, Lake County, before a notary public. It was specifically alleged that the affidavit contained a false statement to the effect that none of the gasoline on which the refund was claimed was used in any vehicle propelled over the public highways or streets of the state, whereas it is alleged that defendant knew that a part of the gasoline was used for propelling vehicles over the public highways or streets of the state. It is alleged that defendant, after subscribing to the false affidavit before the notary public, submitted it to the Montana

state board of equalization at the Capitol in Lewis and Clark County, as a true statement of the facts therein contained.

After the state's evidence was concluded at the trial, the defendant moved for a directed verdict. The motion was granted and the court instructed the jury to return a verdict of not guilty. This was done. The state has appealed from the order of the court directing the jury to find for the defendant. The appeal from such an order is expressly provided for in R.C.M. 1947, section 94-8104.

The order from which the appeal is taken is quite lengthy and need not be repeated in full. It is clear from the order as a whole that the basis upon which it was made was that the State had not proved that the crime in question was committed in Lewis and Clark County. Among other things the court in its order stated:

"It is my opinion, as a matter of law, that if any offense has been proved here, it occurred either in Missoula County or in Lake County. I state that as a matter of law. That is my burden; that is why I am here. I decide the questions of law and you ladies and gentlemen decide the facts. Taking all this evidence together I am satisfied from the way the Information is drawn, that case has to be prosecuted in either Missoula or Lake County, and cannot be successfully prosecuted in Lewis and Clark County. * * *

"It is my opinion, as a matter of law, and I so rule, that this case cannot proceed any further, by reason of the fact that venue has not been proven. For that reason I have granted the motion for directed verdict * * *"

The affidavit in question appears to have been sworn to before Harold E. Olsson who resides at Ronan in Lake County. His recollection was indistinct as to whether Mr. Rother appeared before him when he signed the affidavit. His usual practice was to take acknowledgments of those only who personally appeared before him and after swearing them. He had no personal recollection as to what took place when this affidavit was signed. The most that we can gather from the

testimony is that the affidavit, if in fact it were an affidavit, was made in Lake County. How it got from Lake County to the state board of equalization in Helena the record does not reveal.

Contention is made that the affidavit itself was not properly made, and hence, that there can be no crime without proof of a valid affidavit or oath. For the purpose of this case we will assume, without so deciding, that there was in fact an afidavit made sufficient to comply with R.C.M. 1947, section 94-3806.

Where then was this alleged crime committed? Our statute defining perjury is R.C.M. 1947, section 94-3801, which reads: "Every person who, having taken an oath that he will testify, declare, depose, or certify truly before any competent tribunal, officer, or person, in any of the cases in which an oath may by law be administered, wilfully and contrary to such oath, states as true any material matter which he knows to be false, is guilty of perjury."

And R.C.M. section 1947, section 94-3802, provides: "The term 'oath,' as used in the last section, includes an affirmation and every mode authorized by law of attesting the truth of that which is stated."

However, under our statute, the crime is not complete until the instrument is delivered by the accused to "any other person, with the intent that it be uttered or published as true." This is by virtue of R.C.M. 1947, section 94-3809, which reads: "The making of a deposition or certificate is deemed to be complete, within the provisions of this chapter, from the time when it is delivered by the accused to any other person, with the intent that it be uttered or published as true."

As above stated, this record does not reveal how the instru- got to the state board of equalization. If it was accomplished through the mails, then it was either delivered by defendant or some other person to the postal authorities for such delivery. In either case the crime was completed when the affidavit left the defendant with the requisite intent.

If the defendant delivered the instrument to some other person in Lake County with instructions to such other person to mail it to the state board of equalization, then the crime was completed when the defendant delivered it to such other person. It seems clear from this record that any crime committed by this defendant was committed in Lake County and not in the County of Lewis and Clark.

This case is not controlled by either the case of State v. Hudson ██ ██ 13 Mont. 112, 32 Pac. 413, 19 L.R.A. 775, or State v. Cassill, 70 Mont. 433, 227 Pac. 49. The Hudson case involved the crime of uttering a forged instrument and not the crime of perjury. The Cassill case was for making a false report to the superintendent of banks. The statute involved did not provide, as here, that the crime is deemed complete when the instrument is delivered to any other person with the intent that it be uttered or published as true. The rule applicable here is stated in 70 C.J.S., Perjury, section 21 b, page 479, as follows: "Under statutes declaring that the making of a false and sworn written statement of this character is complete when it is delivered by accused to some other person with intent that it be uttered or published as true, the mere taking of the false oath is not perjury, but, in the absence of actual use [by the defendant himself], it must also appear that accused delivered the affidavit with the statutory intent; and the crime is not complete until the verified false statement of accused leaves the hands of its author and is delivered to another person with intent that it be uttered or published as true. * * *"

This is not a case where the crime is committed in more than one county under the record before us. True, had the record shown that the defendant after making the affidavit carried it to Lewis and Clark County and there placed it before the state board of equalization, then it may be the jurisdiction rested in either Lake or Lewis and Clark County. But there is no evidence here that the defendant brought the affidavit to Helena in person.

362

It is a fair inference that either he or someone else mailed it to Helena. But in that case the place where the defendant surrendered the affidavit with the ·intent that the same should be mailed and thus uttered or published marks the venue of the action. Seemingly that was in Lake County or at least there is no evidence that it took place in Lewis and Clark County.

The case of People v. Agnew, 77 Cal. App. (2d) 748, 176 Pac. (2d) 724, 727, is relied on by the state to sustain its contention that since the affidavit was used or filed in Lewis and Clark County, the venue is in Lewis and Clark County. That case is not comparable to this. It involved a complaint verified by defendant. The verification was made in Santa Barbara County and the complaint was filed in Ventura County. The court held that the proper venue was in Ventura County since that is where the crime was consummated.

The case differs from this in that defendant himself actually filed the complaint in Ventura County. This appears from the opinion wherein it is said: ''On the same day [being the day the complaint was verified by defendant] he filed the complaint in the Superior Court of Ventura county.'' Then again the court in that case said: ''That appellant verified and filed the complaint is an admitted fact.'' Obviously then since the complaint was filed by defendant in Ventura County the court properly ruled that the crime was there completed · under the facts in that case and that Ventura County was the proper place for the venue of the action.

The case of People v. Robles, 117 Cal. 681, 49 Pac. 1042, has been called to our attention, but in that case the sole question was whether the information stated facts sufficient to constitute an offense. In that case the court stated that inferences and presumptions of fact might be drawn by a jury from all the circumstances surrounding the making of an affidavit, but we fail to see where the jury would be warranted in concluding that defendant personally delivered the affidavit in question in Lewis and Clark County. True, the instrument ulti-

mately reached Lewis and Clark County, but under the statute, R.C.M. 1947, section 94-3809, the test as to when and where the crime was completed is when and where did defendant part with the possession of the affidavit with the intent that it be uttered and published. Nothing in this record marks that place in Lewis and Clark County.

Our conclusion is that the court was right in holding that ▮ venue was not shown to be in the district court of Lewis and Clark County. What the defendant should have done was move the court to discharge him and the jury, as was done in State v. Hendren, 127 Kan. 497, 274 Pac. 274. In other words, when the court had no jurisdiction of the action it was improper to receive a verdict of not guilty. Compare State v. Brown, 47 Ohio St. 102, 23 N.E. 747. However, that would not operate as former jeopardy for the very reason that the court was without jurisdiction of the action, State v. Hendren, supra, and it is the rule generally that an acquittal, in order to bar another prosecution, must be in the county in which the offense was committed. See 22 C.J.S., Criminal Law, section 244, page 379. While strictly speaking the court should have dismissed the action and discharged the defendant rather than to have instructed the jury to acquit him, yet we fail to see where this technical irregularity of procedure affected any substantial right of the state since the plea of former jeopardy or twice in jeopardy is not available to defendant. Likewise to remand the case for a new trial in order to correct this procedural step would avail the state nothing.

We do not consider the question whether there is sufficient evidence to warrant submission of the case to the jury. That question is not before us. The only question here is whether the venue of the action is properly laid in Lewis and Clark County.

Likewise it is of no consequence as stressed in the dissenting opinions that the afifdavit was not actually uttered or published until it arrived at the office of the state board of equalization. It is sufficient to constitute the crime and to com-

plete the crime that the affidavit was delivered by defendant to any other person, including the postal authorities, with the intent that it be thereafter uttered or published. That delivery did not take place in Lewis and Clark County.

Accordingly the order appealed from is affirmed.

MR. JUSTICES ANDERSON and DAVIS, concur.

MR. CHIEF JUSTICE ADAIR:

I dissent:

*The Charge.* By information filed in the district court of Lewis and Clark County, the defendant, James Rother, Jr., was accused of the crime of perjury alleged to have been committed on or about the 19th day of October 1949 at the County of Lewis and Clark, in the State of Montana, in that he did then and there, after having taken an oath, wilfully, wrongfully, unlawfully and feloniously, knowingly and falsely state, declare, depose and certify as true a material matter which he knew to be false in an affidavit to and on a claim for refund of gasoline taxes dated October 17, 1949, and numbered 43,301, on which claim Rothers, Inc., a private corporation, was named as the claimant and in which afidavit the defendant, James Rother, Jr., falsely declared, deposed and certified, *inter alia,* "that none of the gasoline on which refund is claimed was used in any vehicle propelled over the public highways or streets of the state" and which affidavit, claim and "false and untrue statement was thereafter submitted to the Montana State Board of Equalization at the State Capitol Building in Lewis and Clark County, State of Montana, by the said James Rother, Jr., as a true statement of the facts therein contained although the said James Rother, Jr., then and there knew that said statement was false and untrue."

The law, in force at the times charged in the information prescribing the procedure and requirements for lawfully obtaining gasloine tax refunds from the State of Montana was Chapter 198 of the Montana Session Laws of 1949, pages 470-473.

*The Proof.* The state's proof to establish the above charges so made against the defendant, James Rother, Jr., consists of three documentary exhibits and the testimony of various witnesses.

The state's evidence is to the following effect:

On the 19th day of October 1949, the State Board of Equalization of the State of Montana, at its office at the capitol, R.C.M. 1947, section 84-706, in Lewis and Clark County, Montana, received by and through the mail, a sworn statement and claim accompanied by certain invoices issued to the claimant, Rothers, Inc., for 11,227 gallons of gasoline purchased by such claimant, during the period from April 23, 1949, through September 24, 1949, on which gasoline so purchased by it, the claimant, Rothers Inc., repreesnted, stated and claimed it was lawfully entitled to a refund from the State of Montana in the amount of $623.83 for gasoline taxes paid into the treasury of the State of Montana by the claimant who represented and stated that such gasoline was used by the claimant for the purpose of operating gas engines, tractors and commercial uses other than for propelling vehicles upon any of the public highways or streets of Montana. See Chapter 198, Montana Session Laws of 1949.

The claimant, Rothers, Inc., is a private closed corporation engaged in conducting timber and sawmill operations at or near Seeley Lake and Holland Lake in Missoula County, Montana. At all times here involved the corporation's officers were James Rother, Sr., president, James Rother, Jr., vice president and Harald E. Olsson, secretary-treasurer, each then residing in Lake County, Montana, the Rothers at Polson and Olsson at Ronan.

The sworn statement and claim received by and presented to the Montana State Board of Equalization is one required by Chapter 198, Session Laws of 1949. It is on Montana State Board of Equalization form R-15-40M-10,46, designed and entitled "Claim for Refund of Gasoline Tax State of Montana".

The sworn statement and claim so presented to and placed

before the Board was offered and received in evidence without objection as the state's exhibit "P-2" and shows on its face: That Rothers, Inc., a corporation, is the claimant; that the statement and claim was signed by the defendant, James Rother, Jr., in such "signer's capacity Vice President"; that on October 17, 1949, the defendant subscribed and swore to the claim, statement and affidavit before H. E. Olsson, a "Notary Public for the State of Montana" and that "W. E. Dickson (clerk) assisted claimant in preparing claim".

The affidavit constitutes a material and essential part of the claim and is required by the statute, Chapter 198, Laws of 1949, supra.

Clifford L. Walker, called by the state as a witness, testified that he is Deputy Secretary of State of Montana and that H. E. Olsson was commissioned as a Notary Public for the State of Montana for the period beginning the 20th day of March 1927 to and including the 20th day of March 1950.

Harald E. Olsson, called by the state as a witness, testified: That at the times here involved he (Olsson) was the secretary-treasurer of Rothers, Inc.; that James Rother, Sr., was the president and that the defendant, James Rother, Jr., was the vice president of such corporation; that at the time of the trial the witness Olsson then was and had been a notary public for approximately thirty-four years; that he notarized the claim (state's exhibit "P-2") at Ronan, in Lake County, Montana, and there affixed his signature and notarial seal thereto; that the witness knows the signature of the defendant and would swear the signature on the claim (state's exhibit "P-2") is that of the defendant, James Rother, Jr.

Kern Schultz, called by the state as a witness, testified: That during the period from April 1949 to and through September 1949 he was employed by the claimant, Rothers, Inc., driving claimant's logging trucks listed in the stae's exhibit "P-2", supra; that he drove such trucks in hauling logs from claimant's various cutting areas into claimant's mill at Holland Lake; that such cutting areas were situate at distances varying from

one-half mile to ten miles distant from claimant's millsite; that there is a public road extending from the mill to claimant's various cutting areas and that in proceeding from the mill to the cutting areas or from the cutting areas to the mill, each truck traveled on, upon and used anywhere from one-half mile to ten miles of such public road.

Frank Tompkins was called as witness for the state but did not take the witness stand as counsel for the respective parties stipulated in open court that such witness would testify that he was a truck driver working for the claimant, Rothers, Inc., during the summer of 1949; that such witness obtained gasoline from the claimant's tanks at the claimant's millsite near Holland Lake and that he drove and operated claimant's trucks in all essentials the same as was testified by the witness Kern Schultz.

It was further stipulated that one Charles Q. Davis, is an assistant or deputy in the county surveyor's office in Missoula County, Montana, and that if called to the witness stand he would testify: That the highway used by the claimant corporation's lumber trucks during the period from April to September 24, 1949, is a public road; that much of said public road is deeded to and maintained by Missoula County, Montana, and that no other road could have been utilized in hauling logs from claimant's cutting areas to claimant's mill.

Willard E. Dickson, called by the state as its witness testified: That from about the 1st of April 1949 to about the 1st of March 1952 he was payroll clerk and office employee for the claimant, Rothers, Inc.; that prior to and on October 17, 1949, at and under the direction of the defendant, at the claimant's office at Seely Lake, all in Missoula County, Montana, he advised the defendant, James Rother, Jr., that the claimant corporation was not entitled to a refund on the gasoline used on the public highways and that he, Dickson, "couldn't sign this claim because it was not correct, we weren't entitled to claim on those trucks."

At this point the witness Dickson was asked what the de-

fendant said upon being so advised by the witness, the record being as follows:

"Q. What did he [defendant] say when you told him that? A. He said he would sign it.

"Q. Did he say anything else? A. He said that everybody claims on those things, they will go through, or something to that effect.

"Q. He said that knowing he wasn't entitled to it? A. Well, I told him * * *

"Q. Did Mr. Rother have knowledge that these trucks were operating over the county-maintained roads? A. Yes.

"Q. He couldn't escape having that knowledge could he? A. No. * * *

"Q. Now, according to your estimate, there was a claim here made for approximately 4500 gallons of gas which Rothers, Inc., wasn't entitled to. Is that true? A. Approximately."

The witness Dickson testified that during the period covered by the claim in question about eighty per cent of the mileage driven by the corporation's logging trucks was done on the county-maintained roads; that there was no deduction for that amount on the claim presented; that the defendant directed the witness as to the manner in which the witness was to prepare such gasoline tax refund claim; that the witness did the actual preparing and typing of the claim and that he would not have placed those logging trucks in the claim for refund had he not been directed to do so by the defendant vice president of the claimant corporation.

Florence McCarthy called by the state as a witness testified: That continuously since April 1947 she had been employed by the Montana State Board of Equalization in auditing gasoline tax refund claims and in checking the information thereon and particularly the invoices submitted therewith; that when and as such gasoline tax refund claims come into the Board's office each is stamped showing the date it is received; that such stamping is done before the claim is de-

livered to the Board's refund department where each claim is given a specific number; that the claim here involved, state's exhibit "P-2", was given No. 43-301; that at the outset it was reecived and stamped in the Board's mailing department on October 19, 1949; that the claimant corporation then had no permit from the Board nor had it applied for one as is required by Chapter 198, Laws of 1949, for which reason the claim was returned to the claimant corporation to enable it to apply for and obtain the required permit without which the claim could not be processed by the Board; that thereafter the claimant corporation applied for and was issued permit No. 32B-356 and its said claim was again presented to the State Board of Equalization where, on November 19, 1949, it was again stamped in the Board's mailing department with a stamp showing that on such date it had been again received by the Board following which the claim was checked processed and approved by the Montana State Board of Equalization and that on December 3, 1949, the claim was paid in full by the state.

*Gravamen of the Offense.* At the close of the state's case in chief the defendant made a motion that the court "direct a verdict for and on behalf of the defendant upon the grounds and for the reasons the State of Montana has failed to prove any element of the *gravamen* of the offense charged in the information."

Ballentine's Law Dictionary defines the term *"gravamen"* as meaning: "Gist; essence; substance; sting." Black's Law Dictionary defines *"gravamen"* as: "The burden or gist of a charge; the grievance or injury specially complained of." Also see 38 C.J.S. at page 1073/ and 1 Bouv. Law Dict., Rawle's Third Revision, at page 1380.

The sting,—the part of the charge which weighs most heavily against the defendant,—the gist of the offense of which he was accused consists not merely in the making and the signing of the statement and affidavit under oath but it lies in the wilful delivery and presentation of the document to the

Montana State Board of Equalization for processing and allowance, knowing the same to be false.

The evidence produced by the state, if believed by the jury, is clearly sufficient to establish and prove each and every essential element of the crime of perjury as charged in the information. Under such state of the record and proof, defendant's motion for a directed verdict was wholly lacking in merit and it should have been denied. The case made was for the jury to determine. It should have been submitted to and decided by the jury.

*Gasoline Tax Refund Law.* The statute, governing claims against the state for gasoline tax refunds and with which the claimant was required to comply at the times here involved, was Chapter 198, Laws of 1949, pages 470, 471, which, in part provided: " 'That any person who shall purchase and use any gasoline, with reference to which there has been paid into the treasury of the State of Montana, under the laws of this state licensing dealers in gasoline, a state gallonage tax, for the purpose of operating or propelling stationary gas engines, tractors used for purposes *other than on the public highways or streets of this state,* * * * or for cleaning or dyeing, or for any commercial use *other than propelling vehicles upon any of the public highways or streets of this state,* and who has paid said tax either directly to the State of Montana or indirectly as a part of the purchase price of said gasoline, shall be allowed and paid as a refund or drawback an amount of money equal to the unit state gallonage tax, multiplied by the number of gallons of gasoline so purchased and used, * * *.' " Emphasis supplied.

Chapter 198, supra, page 472, also provided: " 'Any person desiring to claim refund on gasoline purchased shall obtain from the state board of equalization a permit by application therefor, * * *.

" 'Each permit issued shall bear a permit number and each claim filed shall bear the permit number of the claimant. It

shall be the duty of the state board of equalization to keep a record of all permits issued and a cumulative record of refund claimed and paid thereunder.' "

Chapter 198, Laws of 1949, page 471, further provided: That claimants seeking a gasoline tax refund or drawback shall make application therefor by " '*presenting* to the board of equalization of the State of Montana, within the time allowed by law, *a sworn statement,* accompanied by the invoice or invoices issued to the claimant at the time of purchase of such gasoline showing such purchase and use, which statement shall set forth in words and figures, the total amount of the gasoline so purchased, and the purpose for which the same was actually used, the amount of the tax and such additional information as may be required by said board on forms to be furnished by them. All such applications for refunds or drawbacks shall be filed with the board of equalization of the State of Montana within six (6) months after the date on which such gasoline was purchased as shown by such invoices. The said board shall have sixty (60) days thereafter within which to make such investigation as it may desire, to ascertain the truths of the statements made. *If the statement is found to be correct and is approved by said board and the state board of examiners,* the state auditor shall draw his warrant upon the state treasurer for the amount of such claim and same *shall be paid* out of the gasoline license tax drawback fund *in the same manner as other claims against the state are paid.* Such refund or drawbacks shall be made only to, and on the application of, the actual purchaser and user of the gasoline upon which refuid is claimed and the burden of establishing the validity of the claim rests upon the claimant.' " Emphasis supplied.

The Constitution of Montana provides:

"The governor, secretary of state and attorney general * * * *shall constitute a board of examiners, with power to examine all claims against the state,* except salaries or compensation of

officers fixed by law, * * *." Emphasis supplied. Mont. Const. Art. VII, section 20.

The Constitution of Montana further provides:

"The * * * officers of the executive department, excepting the lieutenant-governor, *shall* during their terms of office *reside at the seat of government, where they shall keep the public records, books and papers.* * * *" Emphasis supplied. Mont. Const. Art. VII, section 1.

The governor, secretary of state and attorney general *"must reside and keep their offices at the seat of government"*. R.C. M. 1947, section 59-304.

The State Board of Equalization is a Board created by the Constitution of Montana. Mont. Const. Art XII, section 15 and section 84-701, Revised Codes of Montana of 1947.

The law requires that the State Board of Equalization *"shall keep its office at the capitol"*. R.C.M. 1947, section 84-706. Emphasis supplied.

Thus must all claims against the state for gasoline tax refunds be *presented,* examined and processed at the seat of government located at the City of Helena, in Lewis and Clark County, Montana, where (1) the State Board of Equalization, (2) the State Board of Examiners, (3) the State Auditor and (4) the State Treasurer are required by law to keep and maintain their respective offices and records.

When such claims for gasoline tax refunds are so *presented* to the designated public boards and officers at their respective public offices located at the seat of government in Lewis and Clark County and there *offered* as good and valid, then, there and thereby are they uttered, published, put forth and sent into circulation as true and made a part of the public records of the state and thus are available and made known to the people in general.

If thereafter it be established that the person swearing and subscribing to the affidavit to the claim has wilfully stated therein as true any material matter which the affiant knows to be false, such affiant is guilty of the crime of perjury under

the provisions of R.C.M. 1947, section 94-3801, which provides:

"Every person who, having taken an oath that he will testify, declare, depose, or certify truly before any competent tribunal, officer, or person, in any of the cases in which an oath may by law be administered, wilfully and contrary to such oath, states as true any material matter which he knows to be false, is guilty of perjury."

In Loraitis v. Kukulka, 1 Ill. (2d) 533, 116 N.E. (2d) 329, at page 331, the court said of a similar statute:

"The explicit language of the statute leaves no doubt as to its broad scope. The law attaches superior effect to statements made under oath, and the statute is designed to insure that all such statements merit the trustworthiness which the law assigns to them. *The statute thus applies to affidavits* as well as testimony." Emphasis supplied.

In Sanders v. People, 124 Ill. 218, 16 N.E. 81, at page 82, the court said:

"The *affidavit* alleged that there was no other person by whom an alibi could be proved except Winchester. The issue presented was the truth or falsity of this allegation. It was pertinent and material to the motion for continuance which had been made by Sanders, and was then pending * * *. It makes no difference that the continuance was denied, or that the affidavit did not show the exercise of due diligence. *If the affidavit was false* as to a material fact necessary to support the general ground upon which a continuance was asked, *then perjury was committed.*" Emphasis supplied.

In state v. Kartus, 230 Ala. 352, at page 355, 162 So. 533, at page 536, 101 A.L.R. 1336, at pages 1340, 1341, it is said:

"In the statute under consideration, the Legislature has made ample provision for supervision, to protect the public from imposition and fraud, by requiring an affidavit, giving full particulars as to the goods to be sold. That the goods to be sold were in fact as represented, the law requires that the licensee shall not only commit his conscience thereto, but shall make solemn oath in support of the representations. *This oath,*

*if wilfully, corruptly, and falsely made, constitutes perjury* by section 5167 of the Code.'' Emphasis supplied.

*The Claimant.* The claimant is Rothers, Inc., a private corporation authorized to engage in a private business for profit. It is a purely fictitious artificial entity created by law. It is invisible and intangible. It may neither be arrested nor imprisoned. It exists only in contemplation of law. It can function only through its officers, agents, employees or representatives.

*Private Business.* The defendant vice president of the claimant corporation in Missoula County directed the corporation's payroll clerk and office employee to prepare the claim for gasoline tax refund and defendant also directed the manner in which the claim should be prepared. Dickson, the clerk, then and there prepared and typed the claim in accordance with defendant's directions. It was on or about October 17, 1949, and after he had typed the claim that Dickson informed the defendant vice president that he, Dickson, ''couldn't sign the claim because it was not correct''.

Upon being asked how the claim thereafter got to Ronan, in Lake County, Dickson testified that to the best of his knowledge it was taken there by the defendant vice president.

At that time Harald E. Olsson, secretary-treasurer of the corporation, was handling a very large part of the claimant's financing and administrative work and he testified that he executed the notary jurat on the claim; that he notarized the claim with his notary seal at Ronan, in Lake County, Montana, and that the signature on the claim is that of the defendant, James Rother, Jr.

The record on Olsson's cross-examination by defendant's counsel, shows: ''Q. After you notarized that claim Mr. Olsson what did you do with it? A. Well, at this date, I wouldn't recall, Mr. Doyle. Possibly I handed it back to whoever gave it to me or *I may have mailed it to the state.* I don't recall.''

It is wholly immaterial whether the claimant corporation's secretary, Olsson, placed the claim in a sealed envelope and

then mailed it postage prepaid and properly addressed to the State Board of Equalization at its office at the state capitol, Helena, in Lewis and Clark County, Montana, or whether said secretary-treasurer handed it back to the defendant vice president or to some other officer, agent, employee or representative of the corporation for mailing or delivery to the State Board of Equalization so far as the crime of perjury is concerned. While the claim so prepared and sworn to remained *within* the corporation and in the possession or custody of the corporation's officers, agents or representatives no mischief is done. People v. Robles, 117 Cal 681, 49 Pac. 1042, at page 1043.

The acts, transactions and discussions by and between the defendant vice president and the corporation's clerk which occurred in Missoula County and those by and between the defendant vice president and the corporation's secretary-treasurer which occurred in Lake County were all had and done *within* the corporation. They were private, not public and they concerned the private business of the private corporation. So too, when the corporation and its officers and agents selected the United States Postal Service as the agency by which they would deliver and present the alleged false claim and affidavit to the Montana State Board of Equalization at its office in Lewis and Clark County, the character of the transaction was not thereby changed from that of private business of and *within* a private corporation to that of public business. As was said in United States v. Wimberly, D.C., 34 F. Supp. 904, 910: "In a scheme to defraud, which contemplates the use of the mails, the relations of the parties thereto are similar to those engaged in a conspiracy, that is, one and all become agents of the entire group."

During the handling and passage through the mail of the envelope with its undisclosed contents they remained private, hidden and unknown to any person or persons other than the private officers, agents and employees of the claimant private corporation.. Neither the United States Postal Service

nor any of its employees had any notice or knowledge that the envelope handled contained any claim for gasoline tax refund.

*Private.* The word "private" is from the Latin *privatus* meaning apart from the state, peculiar to an individual, private.

Webster's International Dictionary (2d Ed.) Unabridged, page 1969 defines the adjective "private" as: "1. Belonging to, or concerning, an individual person, company or interest; peculiar to one's self; unconnected with others; personal; one's own; not public; not general * * * opposed to public. 2. Sequestered from company or observation; not open to the public; secret; secluded; solitary." The antonyms of "private" are public, common.

*Public.* The word "public is from the Latin *publicus* and means: "1. Of or pertaining to the people; relating to, belonging to, or affecting, a nation, state, or community at large; opposed to *private;* as, the *public* treasury, credit * * *" The antonyms of "public" are private; secret, hidden. See Webster's New International Dictionary.

*Public Business.* It was not until the 19th day of October 1949 when the envelope was handed to and received by the state employed clerk in the mailing department of the State Board of Equalization in the Board's office at the State Capitol Building in Lewis and Clark County, that defendant's affidavit attached to and made a part of the claim was delivered to any person other than an officer, employee or agent of the claimant corporation, with the intent that defendant's affidavit and the sworn claim, state's exhibit "P-2", be uttered and published within the meaning of R.C.M. 1947, section 94-3809, and it was not until such state employed clerk in the Board's mailing department opened the envelope that hid and concealed from the view and knowledge of the public the claim and alleged false statements set forth in the afidavit of the accused that they were offered, uttered or published as true and made a part of the public records of the State Board of

Equalization as contemplated by section 94-3809, supra. Then, there and thereby, the claimant private corporation and its officers and employees surrendered custody and control of its claim unto the State of Montana and unto its boards, officers, employees and agents who were charged with the duty of checking, processing, approving or rejecting and paying or disallowing the claim.

R.C.M. 1947, section 94-3809, provides:

"The making of a deposition or certificate is deemed to be complete, within the provisions of this chapter, from the time *when* it is delivered by the accused to any other person, with the intent that it be *uttered* or *published* as true." Emphasis supplied.

The quoted statute, section 94-3809, is the same as section 124 of the California Penal Code as the latter section read prior to its amendment in 1905. In construing the original enactment the Supreme Court of California said: "The word *'deposition'*, here used, includes *'affidavit'*." People v. Robles, 1897, 117 Cal. 681, 49 Pac. 1042.

In enacting the statute, section 94-3809, the legislature used the words "uttered or published" which have long been known to and employed by the law.

*Utter.* The word *"utter"* comes from the middle English words *uttren* and *outren* and from the French *utter* all meaning out, outside or *outer* as an *outer* or *utter* garment.

In English law an *"Utter Barrister"* is one who pleads without the bar. The verb *"utter"* means, "To put or send * * * into circulation * * * to publish or put forth * * * to offer * * * To utter and publish an instrument * * * is to declare or assert, directly or indirectly, by words or actions, that it is good; uttering it is a declaration that it is good, with an intention or offer to pass it." Black's Law Dictionary (3rd Ed.), page 1793.

*"Uttering"* or *"publishing"* a check consists in presenting it for payment. The act is then done although no money may be

obtained thereby. State v. Hobl, 108 Kan. 261, 194 Pac. 921, 924.

Ballentine's Law Dictionary, page 1325 says: "To utter and publish a document is to offer directly or indirectly, by words or actions, such document as good and valid. There need be no acceptance by the offeree to constitute an uttering. See Walker v. State, 127 Ga. 48, 56 S.E. 113, 8 L.R.A., N.S., 1175, 1178."

*Publish.* To *publish* is to "issue, to make known what before was private, to put into circulation." United States v. Williams, C.C., 3 F. 484, at page 486.

"Publish primarily means to make known." 2 Bouv. Law Dict., Rawle's Third Revision, page 2768.

Black's Law Dictionary (3rd Ed), page 1465 says: "*Publish.* to make public; to make known to people in general. * * * To make known, to circulate. * * * To issue; to put into circulation. To utter; to present for payment."

People v. Maxwell, 1897, 118 Cal. 50, 50 Pac. 18, holds that under California Penal Code, section 124, supra (being then the same as R.C.M. 1947, section 94-3809), where the perjury charged was a false oath made by defendant as to matters in his petition in insolvency, the offense was completed when, at the instance of defendant, the petition was *filed* in the court.

In People v. Agnew, 1947, 77 Cal. App. (2d) 748, 755-756, 176 Pac. (2d) 724, 729, the accused on August 8, 1945, made affidavit before a notary public in Santa Barbara County, California, verifying the allegations of his complaint for an injunction against certain officials of Ventura County, California, and on that same day the accused filed such verified complaint in the Superior Court of Ventura County thereby invoking its jurisdiction and action. On September 26, 1945, the grand jury of Ventura County returned a true bill of indictment against the accused that he committed perjury by feloniously, wilfully and corruptly verifying his said complaint for an injunction knowing that the allegations thereof

were false. In affirming the judgment of conviction entered against the accused the appellate court said:

"The fact that the complaint for injunction was verified in Santa Barbara county does not defeat the jurisdiction of the Superior Court of Ventura county. The indictment does show upon its face that the latter court had jurisdiction. The answer to all of the appellant's contentions that the grand jury of Ventura county had no power to consider and indict for the offense and that its court had no jurisdiction to try it is found in the statute which declares that the making of an *affidavit* is complete only 'from the time when it is delivered by the accused to any other other person, with the intent that it be uttered or published as true.' Penal Code, sec. 124. *It is not until verified false statement of the accused leaves the hands of its author that wrong to another is committed and the crime of perjury is complete.* People v. Robles, 117 Cal. 681, 684, 49 Pac. 1042. That appellant's complaint was filed with the county clerk of Ventura county is not disputed. His perjury was thereby consummated." Emphasis supplied.

In People v. Darcy, 1943, 59 Cal. App. (2d) 342, 139, Pac. (2d) 118, 123, 124, a grand jury returned a true bill of indictment against the accused charging him with the crime of perpury in that on March 27, 1934, in an affidavit of registration as an elector he stated under oath before a deputy registrar of voters in the department of elections at San Francisco that his name was "Sam Darcy" and his place of birth "New York" whereas his true name is "Samuel Dardeck" or "Samuel Adams Dardeck" and his place of birth "Ukraine, Russia". On his appeal from a judgment of conviction of the crime charged the appellate court said:

"The law views with abhorrence the use of falsehoods to such an extent that it is no defense to a prosecution for perjury that the oath was administered in an irregular manner. (Penal Code, sec. 121.) A person who, being required by law to make a statement under oath, willfully and knowingly falsifies such statement, purportedly made under oath, in any particular, is

guilty of perjury as a matter of law whether or not the oath was in fact taken (sec. 129), and regardless of whether the maker knew the materiality of the falsehood (sec. 123), and *the offense is complete upon delivery of the affidavit to another person, with the intent that it be uttered or published as true* (sec. 124)." Emphasis supplied.

In State v. Hudson, 13 Mont. 112, 32 Pac. 413, 19 L.R.A. 775, this court said:

"This is an appeal by the defendant from a judgment upon a conviction for *uttering, publishing,* and passing an alleged forged instrument. * * * Information was filed in Gallatin county, charging the offense of *uttering, publishing,* and passing the forged instrument in Gallatin county. The proof was that the defendant deposited the alleged forged instrument in the United States mail at Three Forks, a post office in Gallatin county, directed to the city of Butte, a post office in Silver Bow county, to the Singer Manufacturing Company, the party alleged to be intended to be defrauded by the defendant. The Singer Manufacturing Company, to whom the forged instrument was so sent, received the same at Butte, in Silver Bow county. This was the only testimony as to venue,—as to the place where the defendant *uttered, published,* and passed the instrument. The court instructed the jury, on the matter of venue, that if the state has shown that the defendant mailed the instrument in Gallatin county, state of Montana, addressed to the Singer Manufacturing Company, at the city of Butte, Mont., with the intent, * * * and that the defendant knew the instrument to be false and fictitious, and that the Singer Manufacturing Company received the instrument in the course of mail, that was sufficient. The question now upon the appeal is whether the facts of a mailing of the forged instrument by defendant in Gallatin county, and the due receipt of the same by the Singer Manufacturing Company in Silver Bow county, constituted an *uttering, publishing,* and passing in Gallatin county. If yes, the venue was proved; if no, the venue was not proved, and the judgment must be reversed. * * *

"The precise question presented here was thoroughly considered in New York in the case of People v. Rathbun, 21 Wend. 509. * * * It was held in the Rathbun Case that *the venue was in the county where the letter* containing the forged instrument *was received, and not in the county where it was mailed.* Upon that theory the venue in the case at bar should be in Silver Bow county, and not in Gallatin county. * * * The *uttering* was the offense. *There was no uttering until the receipt of the letter in Silver Bow county. The mailing, as above observed, was not the uttering.* Had the letter been cut off in its passage from Gallatin to Silver Bo wcounty, or had it been destroyed, or never received, there would have been no *uttering* at any place. Nor were the acts or effects constituting the offense committed in Gallatin county. That which constitutes the offense was the *uttering.* If nothing had occurred other than that which occurred in Gallatin county,— that is, if nothing had occurred further than the mailing of the letter in Gallatin county,—there would have been no *uttering,* and no offense. Nor were the acts or effects requisite to the consummation of the offense committed in Gallatin county. It was not requisite to the consummation of the offense that the letter should be mailed in Gallatin county, or elsewhere. The forged instrument could have gone to the Singer Manufacturing Company by any vehicle other than the mail. The defendant could have handed it to the Singer Manufacturing Company in person. It may be said that, under the facts in this case, there would have been no *uttering,*—that is to say, the instrument would not have reached the Singer Manufacturing Company, and so be *uttered or published,*—unless it had been put into the mail, and that, therefore, such depositing in the mail was an act requisite to the consummation of the offense. But on the same line of suggestion it can be said that if a person, having determined to murder, starts from Gallatin county, and travels to Silver Bow county, and there accomplishes the crime of murder, if he had not started from Gallatin county he would not have committed the crime in Silver Bow county,

and his so starting from Gallatin county was an act requisite to the consummation of the offense. But it would not be contended that the venue for such crime of murder could be laid in Gallatin county. Again, a murderer might buy his pistol in Gallatin county, then go to Silver Bow county, and commit the offense. It then could be said, on the same line of suggestion, that if he had not bought the pistol in Gallatin county the offense would not have been committed, and that, therefore, the buying of the pistol was an act requisite to the consummation of the offense. Illustrations of this nature might be multiplied. Such acts as mailing the letter or buying the pistol, or a murdered traveling through Gallatin county to Silver Bow county, would be, in those particular cases, preliminary to the commission of the offense, and acts without which, in the particular case, the offense would not be committed, but they were not acts requisit to the commission of the offense. * * * We are therefore of opinion, in the case at bar, that the venue of the offense * * * was in Silver Bow county, and that the statute [Crim. Pract. Act. section 32] does not change the principles as announced in the Rathbun Case, and generally followed since the promulgation of that decision.''

The words *"uttered or published"* have the same well defined meaning whether employed by this court in writing its opinion in the criminal case of State v. Hudson, 13 Mont. 112, 115, 32 Pac. 413, or used by the legislature in writing and enacting R.C.M. 1947, section 94-3809 of the Penal Code. Likewise in the Penal Code the words *"utter or pass"* in section 94-2006, the words, *"makes, passes, utters, or publishes"* and *"pass, utter, or publish"* in section 94-2007, the words *"uttered, or passed"* in section 94-2008, the words *"utter, or put off, or pass"* and *"uttered, or passed"* in section 94-2010 and the words *"utters, publishes, or puts into circulation"*, in section 94-2012 all refer to the acts and conduct of passing out, putting into circulation, publicly representing and offering as genuine, true and valid, an instrument, document, article, material or substance which was known by the accused to be false, untrue and phony.

The Hudson case, supra, involved the *uttering* as genuine of a false and fraudulent forged instrument and the instant case involved the *uttering* as genuine of an instrument, to-wit, an affidavit alleged to be false and fraudulent. In the Hudson case the *uttering* was accomplished when the mail containing the *forged instrument was delivered to and opened by the addressee* in Silver Bow County. In the instant case the uttering was accomplished and the making of the affidavit completed *when the mail* which contained *it was delivered to and opened by the addressee* board or an officer or employee thereof in Lewis and Clark County.

The Hudson case, supra, is squarely in point and it should be followed here.

In State v. Cassill, 70 Mont. 433, 227 Pac. 49, 50, this court said:

"The defendants C. H. Cassill and Scott K. Cassill were charged with having made false statements to the superintendent of banks concerning the actual financial condition and affairs of the First State Bank of Ovando, of which they were, respectively, president and cashier, in a report submitted to that officer. The report was made upon a prescribed form, pursuant to a call from the superintendent of banks, and purported to show in detail the resources and liabilities of the bank at the close of business on April 28, 1921. It was made up and verified at Ovando, in Powell county, on May 3, 1921, and transmitted by mail to the superintendent of banks at Helena, who received it on May 7, 1921. The information charges that the defendants made false statements in the report * * *.

"To the information the defendants pleaded not guilty, and in due time a trial resulted in their conviction. * * *

"Defendants contend that the district court of Powell county did not have jurisdiction to try them. The trial, they say, should have been had in Lewis and Clark County, where the offense charged was consummated. Their counsel says: 'It would seem, on principle, that if the delivery of this report to the banking department at Helena was an essential ingredient of the

offense, then until such delivery there was no consummated making to the banking department of a false statement or report.' And he urges that, if the report had been lost in the mails, no one rightly could contend the offense had been consummated. These arguments may be conceded, but they are of no avail to defendants. Section 11707, R.C. of 1921 [now R.C.M. 1947, section 94-5605] says: 'When a public offense is committed in part in one county and in part in another, or the acts or effects thereof constituting or requisite in two or more counties, the jurisdiction is in either county.'

"The acts constituting or requisite to the consummation of the offense charged here occurred in two counties, and trial might have been had in either. This case presents a clear illustration of the application of section 11707 [now R.C.M. 1947, section 94-5605]. Citation of authority would seem to be unnecessary, but see State v. Mason, 61 Kan. 102, 58 Pac. 978. * * * *In the instant case the making was the offense. A number of acts entered into thse making, one of which was transmitting the report to the superintendent of banks.*" Emphasis supplied.

So in the case at bar a number of acts of the defendant, James Rother, Jr., entered into the making, one of which was transmitting his affidavit and the claim to the State Board of Equalization at its office in the State Capitol in Lewis and Clark County.

In People v. Vario, 165 Misc. 842, 2 N. Y. S. (2d) 611, a grand jury in the County of Queens in the State of New York was held to have jurisdiction to find an indictment against a defendant for inciting and attempting to procure a witness to commit *perjury* and give false testimony even though it was charged that such incitement and attempt took place in the County of Kings, it being alleged that such incitement and attempt was with respect to a proceeding then pending in the County of Queens *and with respect to testimony thereafter to be given by the witness* in the County of Queens. The appellate court held that the alleged acts of the defendant in the County

of Kings were intended to take place and occur in the County of Queens and that the facts set forth in the indictment fell within the provisions of section 134 of the New York Code of Criminal Procedure which, in substance, are the same as those of section 94-5605, Revised Codes of Montana of 1947.

In State v. Betts, 71 Ariz. 362, 227 Pac. (2d) 749, 750, the defendant, John H. Betts, the president of a private corporation doing business within the State of Arizona was charged and on a jury's verdict, convicted of *perjury*. The charge was that defendant, as president of said corporation, did, on a day certain, subscribe and swear to the annual report of the corporation as required by statute and that he " 'did then and thereby wilfully, and feloniously make and deliver such report to the Arizona Corporation Commission, knowing the same to be false * * *.' " On appeal from the judgment of conviction the Supreme Court of Arizona, *inter alia,* said:

"The defendant has specified a large number of errors * * * the first of which is that the court erred in not granting defendant's motion to dismiss the information both at the close of the state's case in chief and at the close of the entire case. The reason assigned is that it then appeared for the first time that the offense [*perjury*] was committed partly in Cochise County and partly in Maricopa County whereas the information charged its commission in Maricopa County. Defendant contends that the information should have charged that the false report was made in Cochise County and filed in Maricopa County. We cannot agree with this contention. *It is wholly immaterial where the report was made or where the oath was administered, or even whether the oath was valid. The gist of the offense lies in its wilful delivery to the Corporation Commission (knowing it to be false) for the purpose of having it filed in accordance with the provisions of section 53-901, supra.* This section of the statute applies to foreign as well as domestic corporations. If the Southwestern Mines Incorporated had been incorporated in New York with its principal place of business in New York City and the report had been made and subscribed

to under oath in that city certainly, counsel could not logically contend that such fact would place defendant beyond the pale of the Arizona statute upon which this charge of perjury is predicated. If defendant's contention is correct the courts of this state in such cases would have no jurisdiction whatever in the prosecution of a defendant for perjury." Emphasis supplied.

To have any force or effect whatever the claim of which defendant's affidavit was an inseparable part must be *presented* to the State Board of Equalization at its office in Helena, Lewis and Clark County, Montana. The law, Chapter 198, Laws of 1949, so required. At no other place could the instrument be presented, numbered, filed, examined, processed and then be either rejected or approved, allowed and orderd paid.

The defendant was privileged to deliver the claim and affidavit at the Board's office either in person or by an agent or agency of his own choosing. Whether the defendant acted in person or by and through an agent or agency of his own selection is wholly immaterial. If defendant presented the instrument to the Board in person he thereby completed the making of the affidavit and made manifest his "intent that it be uttered or published as true." R. C. M. 1947, section 94-3809.

But says the majority opinion: "It is a fair inference that either he or someone else mailed it to Helena." If such be the case then the doctrine of *qui facit per alium facit per se* (what one does through another he does himself) applies. See R. C. M. 1947, section 2-108.

It matters not whether the defendant vice president of the claimant corporation or some other officer, agent or representative of the corporation or of the defendant, mailed the letter containing the affidavit and claim, they "one and all became agents of the entire group". (United States v. Wimberly, supra [34 F. Supp. 910].) Apparently the corporation and its officers handed over the custody of the envelope to the United States Postal Service which agency thereupon took over the task of transmitting the envelope and contents to the addressee

board at its office in Helena. However, the United States Postal Service is a department of the Federal Government and the placing of the envelope in its charge and custody does not mean that thereby "it is delivered by the accused to any other person, with the intent that it be uttered or published as true" as provided in section 94-3809, supra.

The Congress of the United States has plenary power over the postal service to establish and maintain post offices and post roads. U. S. Const. Art. I, section 8, clause 7.

It is an offense under the federal law for any postmaster or other person employed in any department of the United States Postal Service to wilfully and unlawfully open any letter, postal card or mail intrusted to him or which shall come into his possession and which was intended to be conveyed or carried by mail. It is likewise a federal offense for anyone to use the United States Postal Service or the mails to defraud. It is clear therefore that the envelope was not mailed with any intent on the part of either the claimant of the accused that it be opened and that its contents be examined or even be made known to anyone employed in the United States Postal Service nor with the intent that such claim and affidavit would in this manner "be uttered or published as true." Section 94-3809, supra.

A letter that has been mailed is in the custody of the United States from the time it is received by the postal authorities until its possession is surrendered to the one person entitled thereto, being the one to whom it is addressed, but if a letter is called for, at any time before it is placed in transit, such delivery ends the custody of the United States over it and also the delivery by the government to the addressee or an authorized agent of the addressee terminates the custody of the United States. United States v. Bullington, C.C., 170 F. 121.

It was not until the United States Postal Service delivered the envelope containing the claim and affidavit to the mail clerk in the office of the State Board of Equalization at Helena in Lewis and Clark County, Montana, that the making of defendant's affidavit "is deemed to be complete" being the place

where and "the time when it is delivered by the accused to any other person, with the intent that it be uttered or published as true. "Section 94-3809, supra.

Lewis and Clark County was a proper county for the filing of the information and for the trial of the defendant on the charges therein made. Venue is not an element of the crime charged. State v. Williams, 122 Mont. 279, 280, 202 Pac. (2d) 245. Venue is a question of fact to be determined by the jury and it may be established by circumstantial evidence. People v. Ikner, Cal. App., 1956, 298 Pac. (2d) 45, 47.

The defendant's guilt or innocence was a question for the jury and not for the trial judge. The trial court committed grave error and thwarted the ends of justice when it ordered the jury to return a verdict finding the defendant "Not Guilty". The order so made and the judgment entered on such directed verdict should be reversed. A trial court may have the power but it most certainly does not have the right, under the law, to so dispose of a case made before a jury and requiring its determination.

MR. JUSTICE BOTTOMLY:

I dissent.

The information filed herein charges the defendant with the crime of perjury in that the defendant, after being sworn by and before one Harold E. Olsson, a notary public residing at Ronan, Lake County, made affidavit and certificate to a fact as true, knowing it to be false, and executed the same.

Olsson testified he was a banker in Ronan and a duly commissioned notary public for the State of Montana on October 17, 1949, the date he executed the notary jurat on the affidavit to the claim here involved and which defendant executed: that the signature "James Rother, Jr." affixed to such affidavit is that of the defendant and that he, Olsson, notarized and affixed his notarial seal thereto at Ronan, Lake County, Montana. At the bottom of and as a part of defendant's "Claim

for Refund Gasoline Tax State of Montana'' is defendant's affidavit in words and figures as follows, viz.:

"State of Montana $\Big\}$ ss.
"County of Missoula

"I, James Rother Jr., being first duly sworn on oath, state that the above and foregoing is a true and correct statement showing gasoline purchased and consumed by the claimant; that none of the gasoline on which refund is claimed Was Used In Any Vehicle Propelled Over The Public Highways Or Streets Of The State; That The Invoices Included Are The Original Purchase Invoices Received At The Time Of Purchase; that the said account against the State of Montana is just and wholly unpaid.

"(Signed James Rother Jr.

"Subscribed and sworn to before me this 17 day of October, 1949.

"(Signed) H. E. Olsson
Notary Public for the State of Montana
"[Notarial Seal] Residing at Ronan
"My Commission Expires 3/20/50"

The above allegedly perjurious claim and affidavit on which the information and accusation against defendant are grounded were made by defendant to induce the state board of equalization to refund to defendant the sum of $623.83.

R.C.M. 1947, section 94-3806, provides: "It is no defense to a prosecution for perjury that the oath was administered or taken in an irregular manner."

The information charged the offense as having been committed at Lewis and Clark County, Montana. The state board of equalization has its offices in such county and it there acted upon, allowed and paid the claim. The district court directed a verdict of not guilty, taking the position that if any offense has been proved it occurred in Missoula County or in Lake County and that for such reason the state had not proved venue of the offense in Lewis and Clark County.

*The crime of perjury is a public offense* and is a felony,

punishable as provided in R.C.M. 1947, section 94-3811. "It is no defense to a prosecution for perjury that the accused did not know the materiality of the false statement made by him; or that it did not, in fact, affect the proceeding in or *for which it was made.* It is sufficient that it was material * * *." Emphasis supplied. R.C.M. 1947, section 94-3808.

"It is no defense to a prosecution for perjury that the accused was not competent to give the * * * deposition, or certificate of which *falsehood* is alleged. It is sufficient that he did * * * make such deposition or certificate." R.C.M. 1947, section 94-3807. Emphasis supplied.

R.C.M. 1947, Chapter 56, Local Jurisdiction of Public Offenses, section 94-5605, declares that, *"When a public offense is committed in part in one county and in part in another, or the acts or effects thereof constituting or requisite to the consummation of the offense occur in two or more counties, the jurisdiction is in either county."* Emphasis supplied. Section 94-5605 was conceived for the purpose of extending the lines of jurisdiction and venue beyond the limits fixed by the common law and thus forestall the technical rule relating to venue in multiple element offenses. California has an identical statute being section 781, Cal. Pen. Code, and New York, Code of Criminal Procedure, section 134. See People v. Kastel, 221 App. Div. 315, 222 N.Y.S. 744, 746; Id., 250 N.Y. 518, 166 N.E. 307.

There is no question here but that the allegedly perjurious affidavit, sworn to as true by defendant and properly notarized by Olsson, was delivered to the state board of equalization at its office at the Capitol in Helena in Lewis and Clark County for approval, allowance and payment and that it was there processed by said board and paid. The intent of the affiant therein to utter and publish it to said board in Lewis and Clark County as true was successful.

It is pertinent to note that R.C.M. 1947, section 94-3809, being under the same perjury Chapter 38, provides: "The making of a deposition or certificate is deemed to be complete, from

the time when it is delivered by the accused to any other person, *with the intent that it be uttered or published* as true.'' Emphasis supplied.

Apparently the trial court interpreted this section 94-3809 as follows: ''I subscribe to the rule in American Jurisprudence that when you are trying to charge perjury, the perjury is committed when the affiant swears to and signs the affidavit. That is the consummation of the act of perjury. It is not the consummation of the act of filing a false affidavit; * * * and it wouldn't be the consummation of the act of making a false statement to the state board of equalization.''

The trial court went on to state, ''It is my opinion, as a matter of law, and I so rule, that this case cannot proceed any further by reason of the fact venue has not been proven. For that reason I have granted the motion for directed verdict and I am going to appoint you, Mr. Larimer, as foreman of this jury to sign this verdict. I am simply taking this case out of your hands; there is nothing left for you to decide.

''If you will take this, and sign under my direction, as foreman of the jury, the directed verdict which finds the defendant, James Rother, Jr., not guilty.''

It is my understanding that venue and jurisdiction are not synonymous. ''Jurisdiction'' of a cause means the power and authority given by law to hear and determine it, whereas ''venue'' designates the area in which a court with jurisdiction hears and determines the case. Here the jurisdiction is granted by section 94-5605, supra.

It is the understanding of the writer of this dissenting opinion that the facts and circumstances, set forth in the record herein, bring the case squarely within the provisions of section 94-5605, supra, and that the district court of either Lewis and Clark County or Lake County had *jurisdiction* to try the case under said section. Part of the alleged offense took place in Lake County, i. e., the making of allegedly perjurious affidavit or certificate. But the intent of defendant, that it be ''uttered'' or published as true, could only be for use in ef-

fecting payment to the utterer by the person or entity to whom it was made and directed and by whom it must be approved and allowed, that is the state board of equalization at and in its office at the Capitol in Helena in Lewis and Clark County and not elsewhere.

The last part of section 94-5605 states, "or the acts or effects thereof constituting or requisite to the consummation of the offense occur in two or more counties, the jurisdiction is in either county." Where jurisdiction is fixed by law, the court of the county in which it is so fixed must assume jurisdiction. See R.C.M. 1947, section 93-1106.

The alleged offense was started in Lake County, the allegedly perjurious instrument was delivered to the board of equalization in Lewis and Clark County for payment, and it was approved and paid in Lewis and Clark County by said board. Certainly the execution of the said instrument in Lake County on the forms provided by the state board of equalization, and said executed affidavit directed to said board, delivered to and filed with said board as provided by section 1 of Chapter 198, Laws of 1949, and the delivery thereof by mail or in any other manner or means to the state board in Lewis and Clark County were acts in each county constituting or requisite to the consummation of the offense.

The federal law on jurisdiction in such cases reaches the same result as our section 94-5605, supra, as illustrated by the following. In United States v. Ford, D.C., 3 F. (2d) 643, 647, it is said, "It is, of course, elementary that where a crime is committed partly in one jurisdiction and partly in another the venue may be laid in either place." It is well settled that a prosecution may be maintained in the district where one or more of the acts of the offense took place under section 731 of the Revised Statutes, Com. St. section 1024, which is as follows: " 'When any offense against the United States is begun in one judicial district and completed in another, it shall be deemed to have been committed in either, and may be dealt with, inquired of, tried, determined, and punished in either

district, in the same manner as if it had been actually and wholly committed therein.' '' See Ford v. United States, 9 Cir., 10 F. (2d) 339, 345. The above section is now Title 18, U.S. C.A., section 3237.

The execution of the affidavit or certificate in Lake County and its delivery in Lewis and Clark County to the state board of equalization for payment are acts in each county constituting the charged offense. Section 94-5605. If the information charges the commission of an offense in one county and the evidence shows that the offense was committeed partly in that county and partly in another county, there is no variance and venue and jurisdiction are established. See People v. De Martini, 25 Cal. App. 9, 142 Pac. 898; People v. Thorn, 138 Cal. App. 714, 33 Pac. (2d) 5; People v. Waid, 127 Cal. App. (2d) 614, 274 Pac. (2d) 217; State v. Ashe, 182 Wash. 598, 48 Pac. (2d) 215; Commonwealth v. Jones, 118 Ky. 889, 82 S.W. 643, 644, 645; Commonwealth v. Ward, 308 Ky. 666, 215 S.W. (2d) 565, 566.

This must be so, for by analogy, R.C.M. 1947, section 94-5602, provides that, ''When the commission of a public offense, commenced without the state, is consummated within its boundaries, the defendant is liable to punishment therefor in this state though he was out of the state at the time of the commission of the offense charged. If he consummated it in this state, *through the intervention of an innocent or guilty agent, or any other means proceeding directly from himself,* in such case *the jurisdiction is in the county in which the offense is consummated.''* Emphasis supplied. The intent of the legislature is clearly expressed.

In State v. Cassill, 70 Mont. 433, 438, 227 Pac. 49, 51, this court said: ''The acts constituting or requisite to the consummation of the offense charged here occurred in two counties, and trial might have been had in either. This case presents a clear illustration of the application of section 11707 [R.C.M. 1921, now R.C.M. 1947, section 94-5605]. Citation of author-

*ity* would seem to be unnecessary \* \* \*.'' Compare People v. Rathbun, 21 Wend., N.Y., 508, and cases cited.

The mere delivery of a perjurious affidavit to some third person is not in itself an uttering. It must be delivered at the instance of the accused to a person or entity to whom it is directed or in a matter where the truth or falsity thereof would be of some use. In the instant case, the allegedly perjurious affidavit or certificate was made upon forms furnished by the state board of equalization and attached to and made a part of a claim and affidavit for a refund of the gas tax and directed to the said state board at its office located at Helena in Lewis and Clark County, and the state board, believing the same to be true, there allowed and paid the said claim. Can it be said under these facts that the affiant therein did not have the intent that the allegedly perjurious instrument be uttered and published to the state board at the Capitol in Lewis and Clark County as true? Who acted and who was acted upon? ''Uttering'' implies two parties, a party acting and a party acted upon.

The guilty cannot escape punishment by merely routing their perjurious affidavits through agents, innocent or otherwise. See People v. Kastel, supra.

If an agent of the state board of equalization had been present at the making of the allegedly perjurious affidavit or certificate in Lake County and the same had been at the same time delivered to such agent by the affiant, the offense would have been completed in the one county and jurisdiction would be there. Compare People v. Boggess, 194 Cal. 212, 228 Pac. 448, 451. But where, as here, the offense is committed in part in two different counties and acts or effects requisite or constituting the consummation of the offense occur in two or more counties, the venue and jurisdiction to try the offense are in either county.

The trial court was clearly without authority to make its order of December 20, 1954, directing the jury to return a verdict of ''not guilty'', and the verdict rendered under such or-

der and direction is null, void and of no effect whatever. Said order of the trial court and such verdict should be vacated and set aside.